**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

March 18, 2013

LETTER TO COUNSEL:

      RE:    *Doris Thompson v. Commissioner, Social Security Administration*;
              Civil No. SAG-12-0944

Dear Counsel:

      On March 27, 2012, the Plaintiff, Doris Thompson, petitioned this Court to review the Social Security Administration's final decision to deny her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[1] (ECF No. 1). I have considered the parties' cross-motions for summary judgment. (ECF Nos. 14, 16). I find that no hearing is necessary. Local Rule 105.6 (D. Md. 2011). This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *see Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (superseded by statute on other grounds). Under that standard, I will grant the Commissioner's motion and deny Plaintiff's motion. This letter explains my rationale.

      Ms. Thompson filed her claims on September 3, 2009, alleging disability beginning on March 27, 2009. (Tr. 100-03). Her claims were denied initially on January 5, 2010, and on reconsideration on October 4, 2010. (Tr. 88-89, 92-99). A hearing was held on September 7, 2011 before an Administrative Law Judge ("ALJ"). (Tr. 1057-84). Following the hearing, on September 21, 2011, the ALJ determined that Ms. Thompson was not disabled during the relevant time frame. (Tr. 14-26). The Appeals Council denied Ms. Thompson's request for review, (Tr. 5-8), so the ALJ's decision constitutes the final, reviewable decision of the agency.

      The ALJ found that Ms. Thompson suffered from the severe impairments of multiple myeloma, obesity, fatty liver, umbilical hernia, hiatal hernia, degenerative disc disease, osteoarthritis, status-post-cholecystectomy, status-post oophorectomy, fundal fibroid, ovarian cyst, depression, malrotated kidney, and hypertension. (Tr. 19). Despite these impairments, the ALJ determined that Ms. Thompson retained the residual functional capacity ("RFC") to

---

[1] Ms. Thompson contends that remand is warranted because her SSI application is not included in the case transcript. (Pl. Br. 1). However, Ms. Thompson cites no authority for that proposition, and cites no evidence that might be included in the SSI application that is otherwise missing from the file. Absent an allegation of material missing information, remand is unwarranted.

*Doris Thompson v. Commissioner, Social Security Administration*
Civil No. SAG-12-0944
March 18, 2013
Page 2

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she can only occasionally climb ramps or stairs, balance, stoop, kneel, crouch or crawl.  She can never climb ladders, ropes or scaffolds.  She must avoid concentrated exposure to extreme cold and extreme heat, excessive vibration, hazardous moving machinery or unprotected heights.  She is limited to simple, routine and repetitive tasks in low-stress work environments involving no strict production quotas, and she can only occasional[ly] and superficial[ly] interact with the public, coworkers or supervisors.

(Tr. 21).  After considering the testimony of a vocational expert ("VE"), the ALJ determined that Ms. Thompson could perform jobs that exist in significant numbers in the local and national economies, and that she was therefore not disabled during the relevant time frame.  (Tr. 25-26).

Ms. Thompson raises seven arguments in support of her appeal:  (1) that the ALJ violated the treating physician rule; (2) that the ALJ erred at step three by failing to evaluate fully listings 12.04 and 13.07A; (3) that the ALJ's mental RFC was inadequate; (4) that the ALJ's physical RFC was inadequate; (5) that the ALJ presented a faulty hypothetical to the VE; (6) that the ALJ and VE committed several errors rendering the step five analysis unreliable; and (7) that the ALJ failed to justify his adverse credibility finding.  Each argument lacks merit.

Initially, Ms. Thompson contends that the ALJ failed to afford controlling weight to the opinions of three "treating physicians," Dr. Bousel, Dr. Viloria-Gregada, and Kelly Vail, a licensed clinical professional counselor (LCPC).  Although the opinion of a treating physician can be entitled to controlling weight, such an opinion is not entitled to controlling weight if it is inconsistent with the other substantial evidence of record.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  Moreover, the ALJ is not required to give controlling weight to a treating physician's opinion on the ultimate issue of disability. 20 C.F.R. § 404.1527(d)(2); SSR 96–5p.  Dr. Bousel issued two opinions, and the ALJ specifically addressed his reasons for assigning moderate or minimal weight to each.  (Tr. 24).  With respect to Dr. Bousel's November, 2010 opinion that Ms. Thompson could sit, stand and walk for one hour and lift ten pounds, the ALJ concurred with the lifting restriction, but determined that the remainder of the opinion "is not fully supported by his own reported findings that the claimant has 5/5 strength."  (Tr. 24).  Subsequently, in addressing Dr. Bousel's August, 2011 opinion, the ALJ noted that "Dr. Boudal's [sic] findings on examination are essentially normal."[2] *Id.*  Dr. Bousel's August, 2011 opinion stated that Ms. Thompson met listing 13.07A.  (Tr. 1048-49).  The ALJ assigned the opinion minimal weight, noting that Ms. Thompson's "myeloma is stable, it has responded to therapy, it has not progressed, and it is considered to be mild and low-grade."  (Tr. 24).  The ALJ's assessment is confirmed by the medical records, which indicate that Ms. Thompson had been treated conservatively with a bone-strengthening drug instead of treatment via chemotherapy or a bone marrow transplant.  *See, e.g.,* (Tr. 792-93).  In light of the

---

[2] Throughout the ALJ's opinion, the names of the medical sources are misspelled.  For example, Ms. Vail is identified as "Kelly Kail," and Dr. Viloria-Gregada is called "Dr. Orageda."  (Tr. 24).

inconsistencies between Dr. Bousel's written opinions and the medical evidence of record, the ALJ appropriately assigned those opinions less than controlling weight.

The ALJ assigned "modest weight" to the opinion of Dr. Viloria-Gregada, who stated that Ms. Thompson was mentally incapable of substantial gainful employment. (Tr. 24, 1053-56). The ALJ noted that Ms. Thompson's "examination signs and laboratory findings are modest" and further cited Ms. Thompson's ability to care for her niece and nephew as evidence contradicting Dr. Viloria-Gregada's determination. (Tr. 24-25). In combination with the summary of the evidence throughout the ALJ's opinion, including the recitation of Ms. Thompson's capabilities (Tr. 21), the summary of her reported activities of daily living (Tr. 22), and the inclusion of adequate mental impairment-related limitations in the RFC (Tr. 21), I find the ALJ's decision to assign less than controlling weight to the opinion of Dr. Viloria-Gregada to be supported by substantial evidence.

With respect to the opinion rendered by Kelly Vail, LCPC, the ALJ assigned it "moderate weight" because it "is not entirely supported by the evidence of record cited above." (Tr. 24). In addition, the ALJ correctly noted that Ms. Vail is not an acceptable medical source, pursuant to 20 CFR 404.1513(a) and 416.913(a). *Id.* As a result, her opinion was not entitled to controlling weight.

Second, Ms. Thompson argues that the ALJ erred at step three by failing to appropriately consider listings 12.04 (affective disorders) and 13.07A (multiple myeloma). Ms. Thompson contends that the ALJ's analysis of listing 12.04 was insufficient because he failed to cite to any medical evidence in support of his findings. While the ALJ certainly could have provided more detailed record citations for each of his determinations, there is no requirement that the ALJ cite to medical evidence as opposed to other evidence of record. The ALJ's description of Ms. Thompson's abilities in each functional area comports with the evidence of record and suffices to permit adequate review. (Tr. 20-21). Moreover, although the ALJ only cursorily addressed listing 13.07A in the step three section of the opinion (Tr. 20), the ALJ fully addressed 13.07A while evaluating and assigning minimal weight to Dr. Boudal's opinion, as described above. (Tr. 24).[3] The ALJ therefore did not err in his determination that Ms. Thompson failed to meet either listing.

Third, Ms. Thompson contends that her mental RFC was inadequate. Ms. Thompson cites the failure to include each possible work-related function in the RFC. (Pl. Br. 48-49). However, an RFC contains only the limitations that the ALJ finds to be necessary to allow substantial gainful employment, and need not expressly address certain functions if (1) no limitation is necessary or (2) the function is addressed by a general limitation contained in the

---

[3] The Commissioner also posits that Ms. Thompson's treatment with Zometa does not constitute "antineoplastic therapy" as required to meet the listing. (Def. Br. 17-18). Because I find that the ALJ adequately addressed the basis for finding that Ms. Thompson did not meet or equal listing 13.07A, I need not opine on that issue.

RFC.  Ms. Thompson also contends that the ALJ's "low stress" limitation was not sufficiently descriptive.  (Pl. Br. 49).  However, the ALJ expressly defined "low stress" to mean "no strict production quotas," which provided enough description to be a meaningful limitation for the VE to consider.  (Tr. 21).  Finally, Ms. Thompson contends that the limitation to no more than occasional interaction with supervisors is inconsistent with unskilled work, because SSR 85-15 states that unskilled work usually involves a high level of supervision.  However, it is clear that the ALJ intended the limitation of "only occasional" interaction with supervisors to narrow the range of unskilled work that Ms. Thompson could perform.  The ALJ properly used the testimony of the VE to ensure that the jobs considered involved only the amount of interaction appropriate under Ms. Thompson's RFC.

Fourth, Ms. Thompson contends that the ALJ's physical RFC was inadequate because it did not address her ability to sit and stand.  However, the ALJ expressly limited her to "sedentary work."  Guidance for the amount of standing and walking involved in "sedentary work" is included in SSR 83-10, at *5 and in 20 C.F.R. 404.1567(a) and 416.967(a).  The ALJ need not include further limitation if Ms. Thompson is able to perform the amount of standing and walking associated with sedentary work.

Ms. Thompson's fifth argument is that the ALJ presented a bad hypothetical to the VE. First, she argues that the ALJ did not include all mental work-related functions in the hypothetical.  However, the ALJ is afforded "great latitude in posing hypothetical questions," *Koonce v. Apfel*, No. 98–1144, 1999 WL 7864, at *5 (4th Cir. Jan. 11, 1999), and need only pose those that are based on substantial evidence and accurately reflect a claimant's limitations. *See Copeland v. Bowen*, 861 F.2d 536, 540-41 (9th Cir. 1988).  As a result, just as the ALJ need not include every possible work-related function in an RFC, he need not include that information in a hypothetical question.  Similarly, Ms. Thompson posits that the hypothetical was internally inconsistent.  She contends that the limitation to occasional interaction with supervisors is inconsistent with unskilled work, because SSR 85-15 states that unskilled work usually involves a high level of supervision.  However, it is clear that the ALJ intended the limitation of "occasional interaction with supervisors" to narrow the range of unskilled work that Ms. Thompson could perform.  The ALJ properly used the testimony of the VE to ensure that the jobs considered involved only the amount of interaction appropriate under Ms. Thompson's RFC. Remand is therefore not warranted.

Ms. Thompson's sixth argument is that the ALJ and VE committed several errors rendering the step five analysis unreliable.  Specifically, she notes that with respect to one of the two jobs identified by the VE, the ALJ cited an incorrect DOT job number and an incorrect number of jobs existing in the economy.  (Pl. Br. 52).  Both appear to be typographical errors, since the VE's testimony at the hearing was accurate as to both the DOT number and the number of jobs. (Tr. 1080-81).  However, even if the error were more than typographical, it would be harmless because no such errors existed as to the other job, "table worker," identified by the VE. The number of "table worker" jobs alone (2,000 locally) would establish a "significant number" to justify a finding of "not disabled." *Cf. Lawler v. Astrue,* No. 09-1614, 2011 WL 1485280, at

*Doris Thompson v. Commissioner, Social Security Administration*
Civil No. SAG-12-0944
March 18, 2013
Page 5


*5 (D. Md. Apr. 19, 2011) (finding that the fact that there were only 75–100 jobs in the region where plaintiff lives "does not undermine the ALJ's conclusion that plaintiff is capable of performing work that exists in significant numbers in the national economy."); *Hicks v. Califano,* 600 F.2d 1048, 1051 n. 2 (4th Cir. 1979) (declining to determine that 110 regional jobs would be an insignificant number).

Finally, Ms. Thompson argues that the ALJ provided no explanation of his reasons for finding Ms. Thompson to be less than fully credible. (Pl. Mot. 53). In fact, however, the ALJ provided an extensive summary of the medical evidence, noting a number of "unremarkable" examinations despite Ms. Thompson's reports of significant pain. (Tr. 22-23). The ALJ further cited the consultative examination performed by Dr. Genut in January, 2010, stating, "Most interesting, and most reflective of the entire record, is Dr. Genut's finding that the claimant gave minimal effort on examination and that there were no objective findings to support the claimant's subjective complaints of pain limiting her range of motion." (Tr. 23). In light of this evidence, and the other evidence cited by the ALJ, the adverse credibility finding must be affirmed.

For the reasons set forth herein, Plaintiff's motion for summary judgment (ECF No. 14) will be DENIED and the Commissioner's motion for summary judgment (ECF No. 16) will be GRANTED. The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion. An implementing Order follows.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge